Clerk, please call the next case. 109-307-1 Corporate Express v. Murray May it please the Court, Mr. Wolfe, Joe Branke on behalf of the appellant to Corporate Express. We're here today on the issue of whether the Commission's decision in this case to affirm the arbitrator's award of $22,022.08 in medical expenses from a medical provider, Advanced Physicians, was incorrect. Counsel, I don't want to throw you a curve at the outset here, but it would appear in your briefs that a number of your arguments are supported by citations to decisions of the Commission. Is that correct? Correct. Are you aware of our recent decision in Global Products, in which we clearly held, and it's in accordance with longstanding law, that decisions of the Commission are not precedential and should not be cited? Are you aware of that? No, I was not. Apologize. Keep that in mind in the future. Are you also aware of the provision of Supreme Court Rule 341 that says if you don't cite pertinent authority, you should waive it? All right, then I will waive the authorities cited, or the Commission-level authorities. If you do that, you're left with nothing. You don't have any authority other than that, other than standards of review. You're left without authority, period. Well, then I would proceed just on the fact that the decision is against the manifest weight of the evidence. And why is that? Well, in a workers' compensation case, to show that it was against the manifest weight of the evidence, you have to consider whether there was sufficient factual evidence in the record to support the arbitrator's decision. For an employee in a workers' compensation case, they have the responsibility to prove every element of their claim. In this case, at dispute were certain medical bills from advanced physicians. Now, Section 8A of the Workers' Compensation Act states that an employer is liable to an employee for those necessary medical, surgical, hospital services, but it's limited to what's reasonably required to relieve the effects of the accidental injury. I take this to mean that the employee in this case had the burden of proving by the preponderance of the evidence that the bills from advanced physicians were reasonably required to relieve the effects of the accidental injury. However, in this case, the employee failed to submit, first of all, medical records to support all the dates of services for the advanced physician's bill. Does he have to? Well, there is no authority to indicate that they have to present medical records to support all the corresponding medical bills. The employee would have to provide something else, such as testimony of a doctor, a deposition, their own testimony regarding the reasonableness and necessity of these services. The employee in this case submitted the bill. They had a one-page discharge summary which just stated that the employee attended 76 visits with this provider. And then finally, the employee testified at trial that, yes, I went to this provider, but I did not go through all the dates of services. So the only thing in evidence that the employee submitted that went directly to whether services were provided at this provider on these dates was just a bill. It was a 14-page bill. And none of the evidence went directly to whether the care that was provided at advanced physicians was necessary or reasonable. You know, as I mentioned, the bill supported dates of service, so it could be used as evidence to show that, yes, there was treatment at this provider on these dates, but there was no corresponding medical records to determine, did these services actually occur on these dates? What actually occurred on these dates? So there was nothing that went directly to the reasonableness and necessity. Wasn't there a packet of information that included diagnosis, treatment plans, progress notes, detailed bill that include dates and descriptions of various procedures and therapies, claimant underwent? That's not in the record? That was in the record, but it just goes to evaluations taking place on those dates of service. It doesn't go to the actual treatment that was provided with this provider. The employee is alleging that they underwent various treatments, chiropractic modalities, physical therapy, that type of thing, and there are no records. There are records of periodic evaluations with the doctor reviewing their condition, but there is nothing that goes directly to what occurred day-to-day at that provider. Let me ask you this. What about the testimony in the record that all of these medical procedures and treatments were successful? They alleviated the condition of the claimant. Is that not some evidence? That is some evidence, but when we're looking at the manifest weight of the evidence, the only thing that supports this that the treatment helped was some brief testimony by the employee.  In this case, we have to look at the employee's own treating doctor referred him to an orthopedic surgeon, Dr. Andershak, who found him in February of 2006 to have reached maximum medical improvement and in need of no further care. Approximately one month later, in March, the employee went to see a doctor at the insurance company's request, and that doctor reiterated this finding. The employee is in need of no further medical care at this point. Subsequent to that second declaration of maximum medical improvement is when the employee underwent all of these services. So we're looking at two board-certified orthopedic surgeons' opinion that no further care is needed versus the employee's testimony that I had this treatment and it helped me. Later on, after the services ended at Advanced Physicians, Dr. Mather was deposed, and at that time he was asked, would these services, these types of services that were provided, would those have been reasonable and necessary? He says no. So you're saying all these services that the employee subjected himself to occurred after March of 2006? Yes. Everything that was administered by Advanced Physicians, right? Correct. And how did the claimant get to Advanced Physicians? After the claimant was returned to work by the orthopedic surgeon that their doctor referred them to, the employee went on his own to this provider. Well, he said he referred to Advanced Physicians, didn't he? In his testimony? He didn't just show up at the door. That may have been the case. It was only after the employee returned to work and stated that he couldn't work that then he went back to Advanced Physicians for some further care. He went back? Or, excuse me, he went for the first time. Well, is it true that he testified he was referred by a doctor at Edward Immediate Care, but he couldn't recall the doctor's name, but did recall she was the doctor who was payment? Yes, that's correct. So there was some referral, testimony of a referral. Correct. There's testimony of the referral and then the employee's own testimony regarding this care. But in looking to the manifest weight of the evidence, I think... Also, apparently there was a doctor at Advanced Physicians that had actually done an examination, radiographic studies, et cetera. Correct. That was the initial evaluation. With the plan of treatment. What's wrong with that? What's wrong with that is that this all occurred after the employee had been released and declared in need of no further treatment. By the respondent's examining physician. By the respondent's examining physician and before that by an orthopedic surgeon that the employee was referred to by their own treating physician. So both sides referred the employee to doctors that found the employee had reached MMI in March of 2006. In the arbitrator's decision, she points to Dr. Mather, who is the IME physician, to his opinion that all of the medical care up to this point was reasonable and necessary. That's the only piece of evidence that she cites in her decision about the reasonableness and necessity. However, she misquotes Dr. Mather. She misreads his report as being in March of 2007, which would have meant that all the care up to that point would have been reasonable and necessary. His report was actually March of 2006 before the advanced physician's services were incurred. Counsel, your time is up. You'll have time on rebuttal. Counsel, please. May it please the Court. Ken Wolf on behalf of Christopher Murray. Counsel. Counsel, the issue here does not appear to be complicated. I mean, in essence, you're opposing counsel's arguing the evidence is insufficient to allow the commission to find that the medical expenses incurred were compensable under the Workers' Compensation Act. So what is your response to that argument? He would have us kill two trees instead of the one tree we killed already. The record's that thick. There was more than adequate evidence in the record for the commission to make its decision. Petitioner's Exhibit 7, 33 pages of reports, test results, and notes from advanced. The bill of advanced, itself 11 pages, is incredibly detailed with procedure codes and descriptions of all treatment modalities. We have the testimony of the petitioner, and we have the testimony of their hired examiner who had the benefit of reviewing the copious records from advanced. I made a tactical decision not to put those records in at trial. The reason I did that was, frankly, I thought they were duplicative, and I thought they were unnecessary. I'm mindful of your admonishment and a number of decisions about the ever-burgeoning size of records in these comp cases. When we started in this practice 35 years ago, the average file was maybe that thick. Today, we have files that look like civil litigation files. I may be missing, and I think my colleague's question was, if we understand the opposing counsel's argument is, hey, all that advanced physicians, fine, but we reached MMI before the claimant ever showed up to advanced physicians. And so why are they obligated to pay for that? Because the petitioner had not reached MMI. Dr. Angershak cut him loose too early. This is a man who objectively had a herniated disc in his back. He was still having problems. He went back and, as you pointed out, went to Edwards Immediate Care, talked to a physician there who suggested another burst of physical therapy. There was a new place that opened in his neighborhood. He went to it, and he improved. He avoided surgery. So I know there's screaming about this bill, but the arbitrator did the right thing. It was a bloated bill. It should have been cut down. It was cut down in half, and that was a proper decision. The petitioner was not at MMI when Dr. Angershak cut him loose. The question in my mind is, what would putting all of the PT records into evidence have added to the record? I don't think anything. The second problem with their argument is that it comes too late. Their objection at trial to our bill, Petitioner's Exhibit 7, was based on liability, reasonableness, and necessity of the care. They did not make a foundational objection. If one had been made, I would have reluctantly put another huge batch of records into evidence. Having failed to make that objection at trial, they're precluded from raising it on review. How do you prove that a medical bill is reasonable and necessary? How do you do that? The commission has a fee schedule that they apply in these cases. And that was what the arbitrator did in this case. That's why it was reduced by 50%. I don't think there's any question that the original bill was unreasonable. But I think that with the application of the fee schedule, the commission has come up with a number that is fair and reasonable. Is that how you make a foundation for reasonable and necessary? Some fee schedule? Yes. How do you know that it's reasonable? How do you know it's necessary? The necessity of the treatment is evidenced by the petitioner's response to it, and by the medical testimony. Our examiner, David Robertson, felt that the care was appropriate. The petitioner proved it. He himself testified that it was 90% better after this physical therapy. Refreshingly honest statement by a petitioner. Don't you lay a foundation for medical bills by either introducing a paid bill or introducing the testimony of a medical expert that these services were, number one, necessary, and number two, the charge is reasonable in the community? Ideally, yes. And not ideally? Not ideally. How do you do it? I believe that the application of the fee schedule, and the commission's discretion,  the commission is the dryer of fact. They looked at all the evidence, they listened to, or they looked at the petitioner's testimony, heard from experts on both sides, and they decided what is fair and reasonable. Thank you. Thank you. Reveno, please. My opponent suggests that we objected too late to the reasonableness, liability, and necessity of this, but that's simply not true. We objected when the bills went in at trial to reasonableness, necessity, and liability of these. Included in that argument, you know, it would be the fact that there were not medical bills submitted or medical records submitted corresponding to those bills. In our brief immediately following the trial, the proposed decision to the arbitrator, this issue was raised and it has continued to be raised up to this point. You know, my opponent talked about the evidence that was submitted that went directly to these, supporting these bills, but there was nothing that he could cite that stated that these were reasonable and necessary. Sure, there were certain records from advanced physicians that went into evidence, and he states there's 33 pages. There were 80 dates of service. The 33 pages that were submitted go to 14 dates of service. Now, the employee has the burden of proving every element of their claim, the reasonableness and necessity of these medical services. By submitting it to evidence 14 dates of service, there is evidence to consider the reasonableness and necessity of these 14 dates, but not all 80. What about this argument? Are you saying it's inaccurate as a matter of law that if, in fact, the claimant can show and document improvement in condition, would that bear on the argument over the necessity of the bills or the necessity of the services? Of the claimant's own testimony regarding their improvement of their condition, certainly could go towards that, but the claimant is not a medical professional. They do not know what is reasonable and what is necessary as far as the services that are provided. So there's no medical expert evidence stating that these services that were provided made the employee feel better. There's just a layman's testimony that at a certain point he felt better. Well, but that, you have to face it, pain is not an objective manifested. I mean, if we had that, a lot of these cases would be a lot simpler. If we had a little pain meter, okay, that was not based on self-reported, we don't have that. But the necessary nature could go to, well, it's not necessary to have that massage. I'll give you an ibuprofen for a penny. Correct. Exactly. And the employee did not testify as to what occurred on these dates of services. There is no evidence from the employee submitted at trial that went to, were these modalities provided on these dates, were those specific? What you are saying is that there are only 14 dates of service with the description of the nature of those services in the record and that's it? Or are you saying? Correct. There are no corresponding medical records for all 80 dates. There's just corresponding records for 14 different dates. But the itemized bill shows what the modality was. Is that right? It shows what the modality was, but there are no corresponding medical records to look at whether this actually occurred on this date. Whether the employee noted any improvement at that time. There's just speculation that, I mean, it's reasonable to see a bill for 80 dates of service and think, of course, 80 dates of service were provided. But to consider this case at issue was the reasonableness and necessity of these bills. So just looking, the evidence shows, okay, maybe there were some services provided on these dates, but the evidence doesn't go to the reasonableness and necessity. Can the arbitrator look at reasonableness, not necessity, but reasonableness based on a medical fee schedule? The arbitrator can look at the fee schedule to look at the reasonableness of the care and the bills that were provided. But as far as the day-to-day treatment, the fee schedule is not. So the answer is yes. You don't have a problem with that. They can look at the fee schedule to determine if the fees were reasonable. That's correct. That was my question. But for the services themselves, they have to, the fee schedule does not. It does not establish necessity. Right. Correct. But you would say the reasonableness, we just don't have to have any other testimony or anything to that effect about reasonableness, right, or a bill. We can have the arbitrator just go and take a look at a fee schedule and say, okay, whatever this fee schedule should be, cost why? As far as the cost is concerned, the fee schedule would provide a basis that the arbitrator could determine the reasonableness of those fees. Thank you, counsel. The court will take the matter under advisement for disposition. We'll stand at recess for a short period.